May it please the Court. I want to first begin by recognizing that this is a case that is from the Republic of Germany that are here to observe because Tony Sparks is a citizen of two countries and his story is told in two parts. To begin with, he was born and raised in Germany and the record is replete with the problems that he had growing up with a mother who was, to put it kindly, a barfly. Someone who left him at home alone, someone who allowed him to be sexually abused, someone who caused a lot of trauma. But in his wisdom, Germany, through its essential equivalent of CPS, stepped in and through the help of what is really a good, solid, middle class German family, got into a children's home where, as a review of the record would reveal, he was an exceptional young boy. He came to a place where he was loved. His first and second grade teachers testified on his behalf as to what he was like as a child. Just think about that for a moment. Here you have somebody who is in the United States who was convicted of the crime of carjacking resulting in death. And yet when provided the funds, we were able to go back, find his German CPS records, find his friends and family in Germany and show the story of where Tony came from. And when Tony was very heartlessly taken from this children's home by his mother for a year and basically left to flounder in Germany. And then when his mother's new husband, an admitted gangbanger, took them to Fort Hood, where Tony wound up in a world of gangs. Counsel, it's very important to recognize that all the people that we deal with are human beings and needed to be treated with dignity in this process. But how is this pertinent to your legal argument about whether Miller's ban has been violated here? Well, Your Honor, it goes to the Miller factors. And the government contends that once Miller relief was granted, that it's a free for all, that whatever the court does is just fine. And we are here to argue that Miller is not, we're not arguing for an extension of Miller. We are arguing that the logical implication of Miller is that there is a structure. Because what has happened here is Miller took life without parole away in everything but the rarest of circumstances. Yes, but Mr. Sparks didn't get a sentence of life without parole. He did not. Right. So he got 35 years and the district court wrote a 26 page opinion explaining its consideration of all of the factors, the youth. And I take it from your brief that you concede that he properly considered the youth and immaturity of Mr. Sparks at the time of the carjacking. Isn't that right? Yes, Your Honor. And the district court also considered the 2004 prison riot, the 2006 stabbing, the 2007 stabbing and the 2008 attempted murder that Mr. Sparks had while he was incarcerated before Miller. Well, what's interesting is the court says its focus is he has to step in the shoes of Judge Walter Smith. And when you look at it from that point, I think as Judge Yackel recognized, he had no real guidance. When you say step into the shoes, I don't mean to interrupt, but I want to make sure I understand your sentence. Are you referring to the part on page 22 of the sentencing opinion where the court says, the court concludes it must place itself in the position of the original sentencing court at the time of sentencing? Yes. Isn't he just saying I'm going to apply the 2000 guidelines manual because that was the one that was in effect at the time of the original sentencing hearing? I mean, that's the next sentence. Well, he does. But he also then goes on to consider some Miller factors. And the thing is, that becomes slightly confused. Because the very technical argument, Your Honor, if you go to simply the sentencing guidelines, there are two issues. Number one, he did not get acceptance for responsibility. And when you look at Miller and you look at the Miller factor about whether the juvenile's inability to deal with police and prosecutors results in a greater sentence, Your Honor, there is some discussion. Okay. He did not get acceptance of responsibility because he participated allegedly in this escape attempt. Isn't that why he didn't get the acceptance during the time? While he's waiting, he participates in a, allegedly participates in a bad act. And that's why he didn't get acceptance. Am I wrong that that's what the PSR reflects and that was adopted by the district court? Yes, that's what the PSR reflects. But when you look at the testimony during the hearing, it was somewhat confused. For example, the officer, the gentleman who testified, testifies that Mr. Sparks was in an adjacent cell. But does it matter whether he's down the hall or adjacent? He's allegedly was making racket in order to conceal the guard's screams. And this is during the time that he's being evaluated for the acceptance of responsibility. There's nothing in the record that rebuts that. And the district court adopted the PSR. There isn't that sufficient indicia of reliability, so the district court was within its discretion to adopt that. Mr. Sparks was there. And I will note that the guard, even though she was available, did not testify. Nobody that was a recipient witness to that testified. That's the district, I mean that's what happens. The PSR is introduced. We see, I mean, this is every day. And as long as there's not a bare record or something that lacks indicia of reliability, then the district court can adopt the PSR. As long as there's something in the record to support it. And then the defense lawyer brings in, no, we've got some rebuttal evidence here, this is wrong. And they file objections. And then they reiterate those objections at the time of the hearing. None of that happened here, did it? I mean, there was an initial objection filed to the PSR. I'm not trying to get on rabbit trail there, but. There was. And the issue is, this is so many years later. And when you look at the testimony, it is simply a regurgitation of prior reports. So they knew it was coming and should have been ready to stand and bring forth its evidence to protest it. This was coming down the pike. This was not a surprise that the PSR contained this information. I will grant that. And again, this goes outside the record. And I don't know if you want me to get into something that is outside the record. But. I don't think that's probably appropriate. I don't think it is, which is why I. So I'm just saying that what, how could we possibly find that there was error if the district court had every right to consider the PSR and there's nothing in the record that contradicts the PSR? Because I think you have to look at the Miller factors and look at that discrete issue. And when you look at that discrete issue, it deals with Miller error, Miller point number four, which is whether the juvenile's inability to deal with police and prosecutors result in a greater sentence. And given the fact that it's clear that there was some conversation about plea bargaining, although there was not a plea bargain at the time in 1999, and at that point it appeared to be a life sentence without parole as the only option, even at that time in 1999, that simply wasn't developed in the record at that point in time. I don't understand why his inability to deal with police has to do with whether or not he participated in an escape where a guard was being wounded and that sort of thing. How is that pertinent to, that's, he's not dealing with police at that point. He is. So what are you saying? What I'm saying is he is dealing with police at that point. There could have been additional charges brought because of that escape attempt. And that was all sort of shoved to the side because at that point, while death could have been on the table, a plea of life was arrived at. And I think that's really the point that you have to look at when you get to this particular point, which is that the concentration in 1999 was on saving Mr. Sparks' life. It was really not on this alleged escape attempt, even though he vehemently denied that. Right, but that could have all been litigated at the time of the re-sentencing. There was a regular objections to PSR filed. Why wasn't that litigated at the time of re-sentencing? With the exception of Mr. Sparks' statement, there were no other witnesses that were available to the defense. And given that point, Your Honor, and given the almost 20 years of time that had elapsed, it makes it very difficult. So you have to go back and look at the reports and then look at when you read those reports, you see factual errors in the report. As I was stating earlier, the reports seem to indicate that Mr. Sparks' cell was a jail adjacent, when in fact it wasn't. It was farther away. And so if he's making noise, there was no percipient witness other than one gentleman who testified or gave a statement that was never subject to any kind of cross-examination, unavailable at re-sentencing, to be able to show. And for example, Your Honor. Was there information in the record that he was actually unavailable or that any efforts were made to find him or any of that sort of thing? That's not in the record, is it? Something in the back of my head tells me that there was some conversation, whether it was on the record or not, I cannot tell you. I don't think it was. Do you have any other technical points other than this escape point that you want to raise? And also, you will address our Walton case, which is not published, but it says that a discretionary sentence of 40 years does not implicate Miller. Well, Your Honor, I believe that, and I understand the logic of the Walton case, but I believe that it is inappropriate because Miller itself takes off life without parole, except those who get to the point and you say, well, this is not one of those rare circumstances, then you have to have a structure. And Miller provides that structure because it provides an analysis that allows a court to essentially checklist and go down and look at those five factors. Is your argument a procedural one that the district court failed to consider the five factors, or is it a substantive one that the district court misweighed the five factors? So which one of the five, because I've read this very lengthy opinion that Judge Yackel wrote and I don't see a missing one, and I didn't see anything in your brief that said that he's missing one. So which factor do you think he's missing? I think that what he's done is by putting himself in the shoes of the sentencing court at the time, looking at this at the time of the original sentencing rather than from today, I think there's a rich tapestry of facts that were developed after the sentencing. But he had a five-day sentencing hearing and he talks about all of the things that happened after 1999, including the riot, three stabbings, attempted murders, the escape, all that stuff. It's all in here. So I'm trying to figure out which one of the five of the Miller factors do you think is missing? I think the judge misinterprets life without parole. I think he actually recognizes that without parole, the hope of parole, you have no hope. And here, once Mr. Sparks had the hope, his life changed around. And I think that he misinterprets some of the testimony from our own witness, Dr. Fabian, which talks about how once he had hope, once he was in a safe place, you have to remember this was a 17-year-old child that went to adult prison that had to fight his way in order to gain respect of his elders and peers. And it's no wonder that he had to fight or he'd become someone's possession of property. And once he was at Supermax, he is one of those rare individuals that Supermax worked. And as Judge Yakel even recognized, for the first seven years of his incarceration, he was incorrigible. But that changed after he was at Supermax. It changed when he was able to study... He got a below-guideline sentence. Is that right? Well, yes, he did, Your Honor. And that's presumptively reasonable. Your Honor, I believe my time's out, but I... You can answer Judge Graves' question. I would agree that under ordinary circumstances, it is presumptively reasonable. But I think under Miller, when you look at the Miller factors... He got credit for time, sir. Yes, sir? How much time? Does he have 15 more years or how long? I believe it's 17 years. 17 more years. Okay, thank you. We have your argument, and you've saved time for rebuttal. Thank you very much. May it please the Court, my name is Mike Hardy, representing the United States. There is no Miller v. Alabama error, because the defendant received a less-than-life sentence. That issue is completely moot. What do we do about the fact that the Fourth Circuit has gone the other way and the Supreme Court took the case? Do you think that there is any need to wait? I would like to be educated, Your Honor, as to the name of that case. Okay, just a second. I'll do that. But you keep going. Oh, of course. There is no procedural error in the calculation of the guidelines. The defendant, prior to sentencing, made a 3C1.1 enhancement finding, which is not clearly erroneous. That leaves the question, if there is no procedural error, the question of substantive reasonableness. I think 15 minutes into the 20-minute argument, we're finally getting into the question of in the brief. But if Your Honors believe that it has been, we request that the Court review for preserved error. And we make that request because the defendant did, in a sealed pleading, make a specific request for a sentence that was less than the one that was imposed. The defense requested a sentence not in excess of 248 months. That is in Document 597 within the District Court. There is no ROA number. But the Supreme Court has granted cert in Holguin-Hernandez. And in that particular case, the Solicitor General has taken the position that if the defense does make a specific request for a sentence less than the one ultimately imposed, that that is sufficient to preserve error for regular review by the Court. Right. So we should not review this for plain error, should we? Just in an abundance of caution. That would be our recommendation, that the Court review for preserved error. We believe that whether the review is for plain error or preserved error, it doesn't matter in this case. Three 553 factors were considered and carefully weighed. There is a substantial body of law from this Court to the effect that the Fifth Circuit does not re-weigh those three 553 factors. It's a below guideline sentence. It was reasonable. Is there sufficient indicia of reliability about the guard and the noise, given the fact that they got the wrong room number? Well, I'm not sure I'm prepared to concede that they got the wrong room number, or whether that's even especially material, if it were nearby. Yes, is the answer to your question. In the government's view, there were sufficient indicia of reliability. And there are source documents that were available to the District Court and that are available to your Honors. That is at ROA 2039-40 and 2045-46. There are Colleen Police Department reports, involving an interview of two witnesses to the escape attempt. One was the victim, the guard who was choked. Another was a fellow detainee. And those two people provided detailed statements to the Colleen Police Department. And those reports provide all sorts of indicia of responsibility in supporting the detailed pre-sentence report, the 2018 revised pre-sentence report at paragraphs 67 through 72, recite the factual detail that is involved in the attempted escape. So yes, is the answer. And as Your Honor pointed out, the defendant had an opportunity to present some countervailing evidence. Had that opportunity in 2001. What do you make of the judge's statement that he had to put himself in the shoes of the original sentencing judge? That would be incorrect, wouldn't it? No I wouldn't agree with that, Your Honor. The District Judge was saying he's not sitting like a parole board where there is an imposed sentence and the issue is whether the defendant should be released early. This particular re-sentencing judge is dealing with no sentence at all. The original sentence was vacated. This judge is imposing a sentence. So he's saying I'm starting from square one. That's what he's saying. I'm starting from square one with the information I have today, which I'm going to use. Is that what your position is? It is our position that the judge, the re-sentencing judge, stands in the position of the original sentencing court in the sense that he is imposing a sentence and is considering everything. The case I was trying to think of was Malvo v. Mathena. And it has to do with whether or not Miller is announcing retroactivity, which is what the Fourth Circuit did give to it. But it also has to do with its, it may implicate its application beyond the Supreme Scope of the life sentence. So is there any reason to wait on Malvo before we rule in this case? I'm completely unfamiliar with that opinion. I would be pleased to look it up. Okay. Well, counsel can each submit a 28-J if they so are inclined by next Monday, simultaneous 28-Js, just addressing whether this Fourth Circuit opinion in the CERC grant has any implication here, but not a, this is not a brief. This is a 28-J. Everybody got that? And you're not required to submit it. It's optional. Yes, Your Honor. I would note, in addition, that the defense nowhere in this appellate brief takes issue with the district court's finding that there wasn't acceptance of responsibility credit. It's, I think, perhaps useful to consider that what the Miller factors address is different to an extent than what the 3553 factors cover. One of the Miller factors, one that the defense talks about quite a bit, is the possibility of rehabilitation. And that possibility under that there is a very strong presumption that a youthful offender does have that possibility. But when we look at the guideline sentencing, the burden is on the defendant to show by clear evidence that he has sincerely accepted responsibility. And that didn't happen here. That is to say that the district court denied acceptance of responsibility credit, a finding unchallenged on appeal, and there's ample support for that, wherein the district court did consider the defendant's post-original sentencing conduct. Counsel, just to clarify, we stand at liberty to either require the Miller factors or not right? And the circuit split is already there, right? I'm not aware of a circuit split. Well, between the 7th, yes, I'll just tell you there's a circuit split on whether the Miller applies to a discretionary sentence that's not life. But we have not, we wait in an unpublished opinion. So we could today decide that Miller does apply if we're so inclined, and believe that was the best reading of the Supreme Court precedent. Does that in any way hinder your position in this case? I don't think so. Although I would point out that there are, in addition to the 5th Circuit's 2013 unpublished opinion in Walton, there is a 2017 unpublished opinion that's in the 4th Circuit, Lopez, and that's published, and a 2018 unpublished opinion in the 11th Circuit. So until this other circuit, the 7th, as Your Honor pointed out, there wasn't a circuit split. I would simply say that my information is that almost all of the circuits that have weighed in have found that Miller is, to use the words of those opinions, inapplicable or not implicated by a less-than-life sentence. Okay, so but does it matter here, either way? I don't believe that it does matter, because the district court indicated in its opinion that it was considering the Miller factors as a conceptual overlay, even when it was looking at the 3553 factors. Can we split two different – I want to talk about two different aspects of Miller and make sure I understand the position of the government on it. Judge Elrod and you were just talking about the substantive component of Miller, that is, that the Eighth Amendment somehow imposes certain sentences – I'm sorry, prohibits the imposition of certain sentences. So a sentence, obviously, of life would be prohibited by Miller, as the government previously took a position in this case. And then there's a question about, well, is there some sentence less than life that Miller interprets the Eighth Amendment to prohibit? I understand that to be a substantive rule that the Supreme Court has announced. There's a different question that is implicated in the blue brief in this case, which is the procedural component of Miller, that is, that the district court needs to consider these five factors in addition to the 3553A factors in a Federal sentencing case, because obviously Miller and Malvo and these other cases, these are State cases dealing with the substance of the Eighth Amendment, not Federal sentencing cases like this one dealing with how the 3553A factor should be announced in sentencing. Are you aware of any cases in the United States that have interpreted Miller to impose procedural requirements over and above those in 3553A with respect to Federal prisoners at Federal sentencing? I am not aware. And I would again point out that even if this Court were to hold that the Miller factors must somehow be applied to a less than life sentence, which I think is a stretch well beyond Miller's holding. The district court did that in this case. It filtered youthfulness considerations into every aspect of its consideration of a term of year sentence in this case. And that includes remorse and post-sentence rehabilitation, which the Court regarded as opportunistic rather than sincere in this case. Your Honor? Is there, you know, looking at the justice system from the big picture, is there anything that is fundamentally contrasted with due process in this case? Is there anything unfair about this? I'm just, we understand that we've got consulates and all kinds of people watching us today. We've been informed. Is there anything unfair about this procedure or this outcome in this situation? Your Honor, we're applying the laws of the United States of America. There are two people who were dead, in our view, in part because of the actions of Tony Sparks. I don't believe there is unfairness. We've had a, by virtue of Graham and Miller, there has been a resentencing in this case. This defendant received, as Judge Oldham's pointed out, five days of rehearing testimony. There were 20 witnesses, experts and lay witnesses. There were statements of allocution from the defendant and family and friends of the victims. There was more than 800 transcript pages, close to 900 pages of exhibits in the case. There were more than $180,000 worth of expenses authorized for defense experts and specialized services. And I would cite the court with respect to that to ROA 674 through 76, 682 and 738 through 39. And that all culminates in a 26 page memorandum opinion. If there is more process that this defendant should have received, I don't know what it would be. You've received ample due process. Do you have anything further, counsel? If the court has no further questions, we urge that your honors affirm the sentence in this case and we yield back the balance of our time. Thank you. We have your argument. Counsel, you've saved time for rebuttal. Thank you. What occurs to me in listening to the government's argument is that heft and weight and expense simply does not equate to either due process or proper application of the law. I will grant that the court gave us a phenomenal amount, an unprecedented amount of funding to go to Germany to find the witnesses to tell the other side of that story. And once you consider the other side of that story, I think the court had a very hard time in equating the crime, the person that was there in 1999 with the child that had been raised with the person that exists now. It is, I will concede, a tough call. But at the end of the day, the legal questions that you have pointed out in Malveaux are central to this case. And I would agree that a decision should wait until such time as the Supreme Court litigates that matter and decides that matter because I think it will give us a new overlay to review this case. Either we are right or we are wrong and I believe the Supreme Court will give us that answer in Malveaux, even though that was essentially a state case. But it does go to the heart of Miller. The Supreme Court will decide. Are there any other questions? Counsel, I think we have your argument. Thank you very much. We appreciate it.